# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TAYLOR G. NAIL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 6:18-CV-00159-JHP** |
| | ) | |
| **BLUE DONKEY TRANSPORT, LLC** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **WARREN J. LEWIS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court is Defendants Blue Donkey Transport, LLC and Warren J. Lewis's Motion to Dismiss and Quash Service of Process ("Motion to Dismiss") (Dkt. 12), Plaintiff's Response in Opposition (Dkt. 15), and Defendants' Reply (Dkt. 18). After consideration of the briefs and for the reasons stated below, the Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff, Taylor Nail's claims against the Defendants, Blue Donkey Transport, LLC ("Blue Donkey") and Warren J. Lewis ("Lewis"), arise from a motor vehicle collision that occurred on March 10, 2017, in Wagoner County, Oklahoma on the Muskogee Turnpike. (See Dkt. 2-2 at ¶ 6.) On October 2, 2017, Lewis filed a Voluntary Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the District of Colorado, Case No. 17-19142-KHT. (Dkt. 12-1) In the Bankruptcy Petition, Lewis

identified himself as having 100% ownership interest in Blue Donkey and scheduled it as an asset of the bankruptcy estate. (Id.) Additionally, the Bankruptcy Petition stated Blue Donkey existed and was an active business from January 1, 2013, to July 1, 2017. However, Lewis's Bankruptcy Petition does not identify any claims against the Plaintiff, nor did it list her as a creditor or list her claim against him and/or Blue Donkey as a debt. (Id.)

On October 27, 2017, Plaintiff filed a Petition based upon the collision in the State District Court of Muskogee County, Oklahoma. (Dkt. 2-2) On November 18, 2017, Defendants were served by U.S. Certified Mail, Return Receipt, Restricted Delivery, with State court Summons and Petition. (Dkt. 2-6 & 2-7)

On November 27, 2017, Lewis amended his Bankruptcy Petition's Schedule F – Creditors Holding Unsecured NonPriority Claims to include, "All possible claims related to vehicle accident involving Taylor Nail and Oklahoma lawsuit CJ-17-384" as a general unsecured claim and sent a copy of the Notice of Amendment of Schedule, the Notice of Chapter 7 Bankruptcy Case, and the Meeting of Creditors & Deadlines to Plaintiff's Attorneys. (Dkt. 15-2) As a creditor, the Plaintiff filed a Proof of Claim (Dkt. 15-3) on February 13, 2018, and a Motion for Relief from Automatic Stay and Discharge Injunction ("Motion for Relief") on February 15, 2018. (Dkt. 15-4) Plaintiff's Motion for Relief informed the Bankruptcy Court of her claims against the Defendants, that she did not receive notice of Lewis's Bankruptcy until after filing and serving the Petition with Summons on the Defendants, and that Plaintiff agreed to limit her recovery against the

Defendants to the insurance policy limits of the Defendants' available insurance coverage. On April 11, 2018, the Bankruptcy Court entered an Order stating:

> 3. On October 27, 2017, without any knowledge of this bankruptcy proceeding, Taylor G. Nail filed her Petition in the District Court of Muskogee County, Oklahoma, styled *Taylor G. Nail v. Blue Donkey Transportation, LLC and Warren J. Lewis*, Case No.: CJ-2017-384 … .

> 4. Because Plaintiff's claim is a personal injury claim, the claim would be properly resolved and liquidated in the pending State Court Action. 28 U.S.C. § 157(b)(5).

> 5. At the time Ms. Nail's claim against Mr. Lewis and Blue Donkey Transportation, LLC arose, Mr. Lewis and Blue Donkey had liability insurance coverage in the amount of $1,000,000.00, which will provide coverage for the claims asserted by Ms. Nail.

(Dkt. 12-2) In granting Plaintiff relief from the Automatic Stay and Discharge Injunction, the Bankruptcy Court found:

> Good cause exists for this Court to grant relief from the automatic stay under 11 U.S.C. §362(d)(1), and the discharge injunction under 11 U.S.C. §524 in order to permit Ms. Nail to *proceed* with her State Court Action to the extent of Mr. Lewis and Blue Donkey Transportation's insurance policy limits.

(Id., emphasis added.) On April 27, 2018, Plaintiff filed a notice of the Bankruptcy Court's order granting relief from the Automatic Stay and Discharge Injunction in the State District Court case and filed the Returns of Service for the Summons and Petition. (Dkt. 2-5, 2-6, & 2-7)

On May 21, 2018, the Defendants removed the State District Court Case to this Court (Dkt. 2) and filed the pending Motion to Dismiss (Dkt. 12). Subsequently, Plaintiff timely responded in opposition to the Motion to Dismiss (Dkt. 15) and re-served the

Defendants[1] with Summons and Petition on June 9, 2018 (Dkt. 16 & 17). As allowed

under LCvR 7.1(e), Defendants filed a Reply, in part addressing the Plaintiff's re-service

on the Defendants. The Motion to Dismiss is fully briefed and ripe for review.

**DISCUSSION**

The Defendants move for dismissal and to quash service based upon 12(b)(2), lack

of personal jurisdiction, and 12(b)(5), insufficient service of process. Secondarily, the

Defendants argue Plaintiff's Petition states a punitive damage claim in contravention of

the Bankruptcy Court's Order for Relief from the Automatic Stay and Discharge

Injunction. (Dkt. 12 at 6) The second issue is not related to 12(b)(2) or 12(b)(5) but is

more accurately framed as a 12(b)(6) motion, failure to state a claim upon which relief

can be granted. Each of the Defendants' defenses are addressed separately.

### I.    Personal Jurisdiction

While the Defendants move to dismiss based upon 12(b)(2), lack of personal

jurisdiction, they do not address whether this Court has personal jurisdiction under the

classic minimum contacts analysis. Rather than assume the Defendants waived this basis

for lack of personal jurisdiction, the Court determines whether it can exercise personal

jurisdiction under the minimum contacts analysis.

#### A.    Minimum Contacts Requirement

In these cases, the "plaintiff bears the burden of establishing the Court has

personal jurisdiction over the defendant." OMI Holdings v. Royal Ins. Co. of Canada,

---

[1] The Affidavits of Service filed in this case show a process server personally served Lewis on behalf of himself and on behalf of Blue Donkey.

149 F.3d 1086, 1091 (10th Cir. 1998) (quoting <u>Rambo v. American Southern Ins. Co.</u>, 839 F.2d 1415, 1417 (10th Cir. 1988)).  "When a Court rules on a Fed. R. of Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, … the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  <u>Id</u>. (citing <u>Kuenzle v. HTM Sport-Und Freizeitgerate AG</u>, 102 F.3d 453, 456 (10th Cir. 1996)).  A plaintiff may utilize an affidavit or other written materials stating facts if taken as true which support the Court's exercise of jurisdiction over the defendant, and thereby, satisfying the prima facie requirement.  <u>Id</u>.  To defeat the plaintiff's prima facie showing, the defendant is required to present "a compelling case demonstrating 'that the presence of some other consideration would render jurisdiction unreasonable.'"  <u>Id</u>.  (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed 2d 528 (1985)).  In resolving whether jurisdiction exists, the Court must accept the plaintiff's allegations in the complaint as true:

> to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

<u>Taylor v. Phelan</u>, 912 F.2d 429, 431 (10th Cir. 1990) (quoting <u>Behagen v. Amateur Basketball Ass'n</u>, 744 F.2d 731, 733 (10th Cir. 1984) (citations omitted), *cert. denied* 471 U.S. 1010, 85 L. Ed. 2d 171, 105 S. Ct. 1879 (1985)).

Under this analysis, the Court uses the law of the forum State to investigate whether it has personal jurisdiction over a nonresident defendant.  <u>Id</u>. (citing <u>Yarbrough</u>

v. Elmer Bunker & Associates, 669 F.2d 614, 616 (10th Cir. 1982); *see also* Fed. R. Civ. P. 4(e). The forum State's long-arm statute and the Constitution must be satisfied before the Court may exercise jurisdiction. In this case "[b]ecause Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo, 839 F. 2d at 1416.); *see also*, Okla. Stat. tit. 12, § 2004(F).

The due process inquiry involves a fact-specific two-step assessment: 1) a determination of whether the nonresident defendant has sufficient "minimum contacts with the forum State that they should reasonably anticipate being hauled into court there" OMI Holdings, 149 F.3d at 1091 (quoting World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)); 2) if sufficient minimum contacts are found, then a determination of "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions' of fair play and substantial justice" Id., (quoting Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 105, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)); *see also*, TH Agriculture & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282, 1287 & 1292 (10th Cir. 2007). The Courts recognize two types of personal jurisdiction, general and specific. Bristol-Myers Squibb Co. v, Superior Court, 137 S. Ct 1773, 1780, 198 L. Ed. 2d 395 (2017) (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d. 796 (2011). General jurisdiction applies when a defendant's contacts with the forum

State "are so 'continuous and systematic' as to render them essentially at home in the forum State."   Goodyear Dunlop, 564 U.S. at 919 (citing International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).   "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State."   Bristol-Myers, 137 S. Ct. at 1780 (emphasis in original) (citing Goodyear Dunlop, 564 U.S. at 919).   Unlike general jurisdiction, specific jurisdiction "depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."   Goodyear Dunlop, 564 U.S. at 919 (citation omitted).

In the instant case, the Court examines the written materials submitted and Plaintiff's Petition to determine whether the prima facie case for either general or specific personal jurisdiction is established in the forum State of Oklahoma.   From Lewis's Bankruptcy Petition, the Court finds:

1.    Lewis is a resident of Colorado (Dkt. 12-1 at 14);[2]

2.    Blue Donkey's business address was in Colorado (Id.);

3.    Blue Donkey's business operations involved auto hauling services (Id.);

4.    Lewis lists in his Bankruptcy Assets a single 2008 Freightliner and Trailer (Id. at 19, 24, & 26);

For determining personal jurisdiction, the Court accepts and finds the following uncontroverted allegations in Plaintiff's Petition are true:

---

[2] Plaintiff's Petition also alleges Lewis is a resident of Colorado and Blue Donkey is a Colorado limited liability company.  (Dkt. 2-2 at ¶¶ 2-3)

1. Lewis and Blue Donkey were operating in Oklahoma on March 10, 2017 (Dkt. 2-2 at ¶¶ 6-7, 11-12);

2. Lewis was driving a 2008 Freightliner Truck-Tractor/Semi-Trailer when it collided with Plaintiff's vehicle on the Muskogee Turnpike in Wagoner County, Oklahoma (Id. at ¶ 6);

3. Lewis maintains a Commercial Driver's License (CDL) requiring him to comply with Oklahoma law.

4. Because of the collision with Plaintiff's vehicle, Lewis was cited for violating Okla. Stat. tit. 47, § 11-801.

Upon examination, these facts fail to establish general jurisdiction because they do not show the Defendants' contacts with Oklahoma were "'continuous and systematic'." Goodyear Dunlop, 564 U.S. at 919 (citation omitted). Nevertheless, this Court can exercise specific personal jurisdiction because the Defendants' conduct while driving in Oklahoma subjected them to the State's regulation and resulted in the controversy at issue in this case. Id.

While the Court has a basis to exercise specific personal jurisdiction over the Defendants, it cannot effectuate its personal jurisdiction until the procedural requirement of service of process or its waiver is satisfied. Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344, 350, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (Justice Ginsberg explained, "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant.") (citation omitted). Whether Plaintiff's service of process is valid forms the foundation of Defendants' 12(b)(2) and 12(b)(5) defenses. The considerations are the same for both defenses.

## B.      Service of Process Requirement

To determine the sufficiency of process prior to removal, the Tenth Circuit Court instructs courts to apply the State law.  Wallace v. Microsoft Corp., 596 F.3d 703, 706 (10th Cir. 2010).  The Defendants contend because of the Bankruptcy filed on October 2, 2017, the Automatic Stay voids Plaintiff's service of the Summons and Petition by U.S. Certified Mail, Return Receipt, Restricted Delivery on November 18, 2017.[3] (Dkt. 12 at 3; *Compare* Dkt. 1-1 *with* Dkt. 2-6 & 2-7) Whenever a person files for bankruptcy protection, the law imposes an automatic stay on all pending proceedings and all possible proceedings based on claims that could have been brought prior to the filing date of the Petition. 11 U.S.C. 362(a).

The Oklahoma Supreme Court recognizes "the automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws."  Bailey v. Campbell, 1991 OK 67, ¶ 12, 862 P.2d 461.  In deciding the breadth of the automatic stay in State proceedings, the Oklahoma Supreme Court explained:

> ¶13 The stay has two primary purposes - to give the debtor a breathing spell from creditors, allowing a fresh economic start and to provide some measure of creditor protection. Recognition that judicial proceedings prosecuted in violation of an automatic stay are a nullity ensures that these goals are met. (footnotes omitted) Id; *see also*, Bank of Oklahoma, N.A. v. Miller, 2017 OK CIV APP 48, ¶¶ 15-16, 403 P.3d 389 (internal citations omitted) (finding post-bankruptcy petition judgment *void ab initio* because of the automatic stay.)

---

[3] OKLA. STAT. tit. 12 §§ 2004 (C)(2) and (E)(2)(c) authorize service by certified mail, return receipt, restricted delivery.  The Defendants do not challenge the method or form Plaintiff used for service of process.

Thus, the Court determined a "judicial proceeding undertaken in violation of an automatic stay are ineffective." Id. at ¶ 12. While ruling "[p]ost-petition proceedings are a nullity when, as here, the underlying proceeding at its inception was one against the debtor," the Court identified Tenth Circuit Court and other Circuit Court precedent allowing for exceptions rendering violations of the automatic stay voidable in certain circumstances. Id. at ¶ 13 (internal citations omitted) (fn. 20 discussing In re Calder, 907 F.2d 953, 956 (10th Cir. 1990)); Matter of Matthews, 739 F.2d 249, 251 (7th Cir. 1984); Picco v, Global Marine Drilling Co., 90 F.2d 846, 850 (5th Cir. 1990). Applying Oklahoma law to Plaintiff's November 18, 2017 service on the Defendants, this Court finds the service of process is void. However, the Court's examination does not end there.

Because the Defendants removed the case to federal court, 28 U.S.C. § 1448 provides for service of process after removal if service was not perfected prior to removal. Wallace, 596 F. 3d at 706. As Plaintiff's service is void before removal and therefore, not perfected, Plaintiff is allowed under Fed. R. Civ. P. 4(m) to service of process on the Defendants after removal. Id. at 706-707. Here, Plaintiff utilized a process server to serve Defendants with Summons and Petition after removal, on June 9, 2018. Unlike the first service on November 18, 2017, the service after removal was effectuated after obtaining relief from the automatic stay. (*Compare* Dkt. 12-2 *with* Dkt. 16 & 17) Whatever defect in the service made prior to removal is cured when Plaintiff properly and timely served the Defendants after removal. On this basis, Defendants' Motion to Dismiss is DENIED in part.

## II.    Subject Matter Jurisdiction

In their Reply, Defendants raise a 12(b)(1), subject matter jurisdiction defense, and possibly a 12(b)(6) defense based whether the initial filing of the Petition is void because it is in violation of the automatic stay.  When a court lacks subject matter jurisdiction, it is required to dismiss the case totally and without delay.   Fed. R. Civ. P. 12(h)(3). As such, the Court addresses this potential defense but finds it unpersuasive and without merit.

The decision to lift and/or grant relief from the automatic stay is within the discretion of bankruptcy judge.  Pursifull v. Eakin, 814 F.2d 1501, 1504 (10th Cir. 1987). As permitted under Fed. R. Evid. 201,[4] this Court takes judicial notice of the Colorado Bankruptcy Court proceedings, its docket, and finds the following:

1.    Lewis did not list the Plaintiff of her claim in his Bankruptcy Petition (Dkt. 12-1);

2.    Lewis did not give notice to the Plaintiff of his filing of the Bankruptcy Petition until after she filed her case in state court and served him with notice (Dkt. 15-2);

3.    After receiving notice of the Bankruptcy Petition, Plaintiff filed a Proof of Claim and a Motion for Relief from the Automatic Stay (Dkt. 15-3);

4.    The Defendants were given notice and an opportunity to object to Plaintiff's Motion for Relief from the Automatic Stay (Co. Bnkr. Case No. 17-19142-KHT, Dkt.51);

5.    The Defendants did not file an objection nor request a hearing on Plaintiff's Motion for Relief from the Automatic Stay (Id.);

---

[4] Courts frequently take judicial notice of case proceedings brought before them.  In re Calder, 907 F. 2d at fn. 2 (recognizing the lower Court is permitted to take notice of the contents within bankruptcy court filings); ASARCO, LLC v. Union Pacific Railroad Co., 755 F. 3d 1183, fn. 5 (10th Cir. 2014) (relying on relevant documents from a related bankruptcy case).

6.    The Defendants did not appeal the Bankruptcy Court's Order granting Plaintiff relief from the Automatic Stay;

7.    In its Order granting relief from the Automatic Stay, the Bankruptcy Court found:

   a.    the Plaintiff was ignorant of the bankruptcy proceeding when she filed her case;

   b.    Plaintiff's claim would be properly resolved in the pending State Court Action.

   c.    the Defendants have insurance coverage available that could cover Plaintiff's claims;

   d.    the Plaintiff agreed to limit her damages to the insurance policy limits;

   e.    Good cause exists for granting relief from the stay pursuant to 11 U.S.C. § 362(d)(1);

   f.    Plaintiff is allowed to proceed with her State court action.

11 U.S.C. § 362(d)(1) states the bankruptcy court "shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, *annulling*, modifying, or conditioning such stay -- (1) for cause, including the lack of adequate protection in property of such party in interest." (emphasis added) The Tenth Circuit Court recognized the authority to retroactively reinstate claims, or annul a stay, "to claimants who were honestly ignorant of the bankruptcy stay." Franklin Savings Association v. Office of Thrift Supervision, 31 F. 3d 1020, 1023 (10th Cir. 1994).[5] The

---

[5] In the Motion to Dismiss, the Defendants rely on numerous cases where courts have voided post-stay proceedings regardless of later obtaining relief from the automatic stay. Even if the *res judicata* did not prohibit this Court from revisiting the issue decided by the Bankruptcy Court, these cases are not persuasive. Unlike the plaintiffs in Swarey, Plaintiff has not sought default judgment against Defendants at any point in time much less prior to the lifting of the stay. *Compare* Swarey v. Stephenson, 222 Md. App. 65, 84, 112 A.3d 534, 545 (2015). Similarly, Plaintiff has not sought or obtained summary judgment against Defendants or enforced any order

Bankruptcy Court found Plaintiff to be ignorant in this respect when granting relief and

specifically allowing her to proceed with her State District Court case. *Res judicata*

prevents this Court from second-guessing the propriety of the Bankruptcy Court's order.

Derringer v. Chapel, BAP No. NM-05-020, 2005 Bankr. Lexis 1621, *12 (10th Cir.

2005) ("a final judgment on the merits of an action precludes the parties or their privies

from relitigating issues that were or could have been raised in that action."); *but see*, State

Bank v. Glenhill, 76 F.3d 1070, 1082-83 (10th Cir. 1996) (explaining the difference

between a prohibited collateral attack and a permissible direct attack of a bankruptcy

court order under *res judicata*). The Defendants had an opportunity to contest and/or

appeal Plaintiff's request for relief in the Bankruptcy Court. Since the stay as to

Plaintiff's State District Court case was annulled by the Bankruptcy Court's Order, this

---

that would pay Plaintiff. *Compare* Citibank, N.A. v. Peters, No. 2002-112, 2008 U.S. Dist. LEXIS 99479, at *7 (D.V.I. Dec. 9, 2008) (unpublished). This case is plainly not like the In re Laine, where the Plaintiff knew about debtor's bankruptcy proceeding and in violation of the stay filed suit, and served the debtor when he appeared for the trial on his motion to dismiss in the bankruptcy proceeding. *Compare* Laine v. Gregory-Laine (In re Laine), 383 B.R. 166, 178 (Bankr. D. Kan. 2008). Unlike the plaintiffs in the cases relied upon by the Defendants, which sought to take advantage of defendants' bankruptcy or willfully violated the stay, the Plaintiff, here, did not act in such a manner. Upon receiving notice of the Bankruptcy, Plaintiff did not continue pursuing her claims until seeking permission and relief from the Bankruptcy Court. Plaintiff never filed a motion for default and cooperated with the Defendants by extending a professional courtesy for the filing of their answer.

Some might argue the Defendants' reliance on the stay and bankruptcy proceedings, at this stage, is disingenuous when the Bankruptcy Court has disallowed Plaintiff's claim. The Tenth Circuit dislikes when the debtor's "unreasonable behavior contribute[s] to [a] creditor's plight." In re Calder, 907 F.2d at 956. Equity demands an automatic stay not be used as a sword to defeat a creditor who lacks actual notice of a bankruptcy. Id.

Court is not deprived of subject matter jurisdiction.[6]  On this basis, Plaintiff's Motion to

Dismiss is DENIED in part.

### III.    Plaintiff's Punitive Damage Claim

Lastly, the Defendants move the Court to dismiss[7] Plaintiff's case because it

includes a punitive damage claim.   While not cited properly, the Court accepts this

attempt as a motion to dismiss for failure to state a claim upon which relief can be

granted, 12(b)(6).  "It is clear that the purpose of Rule 12(b)(6) is to test 'the sufficiency

of the allegations within the four-corners of the complaint after taking those allegations

as true.'" H.S. Field Serv. v. CEP Mid-Continent LLC, No. 12-CV-531-JED-PJC, 2014

U.S. Dist. LEXIS 181289, at *4 (N.D. Okla. Nov. 5, 2014) (quoting Mobley v.

---

[6] The same analysis applies to whether the Plaintiff's Petition survives a potential 12(b)(6) motion based upon the same theory.  Because of the Bankruptcy Court's Order, Plaintiff may proceed and, in general, states a claim upon which relief can be granted.

[7] Alternatively, the Defendants request the Court enter an indefinite stay of this case pending a resolution in the Bankruptcy Court or transferring the case to the Bankruptcy Court.  Neither of these are viable options.  As permitted by Fed. R. Evid. 201, the Court takes judicial notice of the following Colorado Bankruptcy Court proceedings:

1.  On April 18, 2018, the Bankruptcy Trustee filed an Objection to Plaintiff's Proof of Claim.  (Co. Bnkr. Ct., Case No. 14-19142-KHT, Dkt. 54)

2.  The Trustee objected to Plaintiff's claim because Plaintiff was granted relief from the stay "to pursue her claims in State Court and pursuant to the motion for relief from stay, any potential damages should be resolved from the liability insurance." (Id. at Dkt. 54, ¶¶ 3-4)

3.  After notice of the Trustee's Objection was given to Plaintiff, no objections or requests for hearings were filed.  (Id. at Dkt. 60, ¶¶ 2)

4.  The Court granted the Trustee's Objection and disallowed Plaintiff's claim in its entirety on June 6, 2018.  (Id. at Dkt. 61)

5.  On June 29, 2018, the Trustee filed her Final Report stating, "any objections to the allowance of claims have been resolved." (Id. at Dkt. 63, ¶ 6)

Based upon these court records, the Bankruptcy Court has disallowed Plaintiff's claim and no longer has an interest in this matter.

McCormick, 40 F.3d 337, 340 (10th Cir. 1994)). Generally, such a "motion addresses a question of law - the legal sufficiency of the complaint, not its factual support." *Id*. (citing Dubbs v. Head Start, Inc., 336 F.3d 1194, 1202 (10th Cir. 2003)). The Court does not need to determine whether it should consider the inclusion of Defendants' Exhibit 1 with their Reply converts the motion to a motion for summary judgment because the issue is resolved as a question of Colorado's substantive law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) (federal courts in diversity cases apply state law when deciding substantive law questions); Hanna v. Plumer, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965); Sim v. Great American Life Ins. Co., 469 F.3d 870, 877, (10th Cir. 2006).

For determining whether a punitive damage claim is permissible within the boundaries of the Bankruptcy Court's Order granting the Plaintiff to proceed with her claim up to the Defendants' insurance coverage and policy limits, the Court accepts as true the following "facts" stated in Plaintiff's Petition:

1.  Blue Donkey is a Colorado limited liability company (Dkt. 2-2 at ¶ 3);

2.  Blue Donkey was in a business requiring compliance with the Federal Motor Carrier Safety Act (Id. at ¶¶ 14-15);

3.  Lewis was an employee of Blue Donkey and was driving a semi-tractor trailer for Blue Donkey at the time of the collision with Plaintiff (Id. at ¶¶ 6, 11-12);

Based upon these facts, the Federal Motor Carrier Safety regulations apply to Blue Donkey business. These Regulations require motor carriers who operate interstate to carry insurance coverage. 49 C.F.R. § 387.7. The regulations set minimum standards for

coverage and requirements for maintaining coverage. 49 C.F.R. §§ 387.7-387.11. One of the requirements provides "a policy of insurance … does not satisfy the financial responsibility requirements of this subpart unless the insurer of the policy is – (b) legally authorized to issue such policies in the State in which the motor carrier has its principal place of business or domicile …" 49 C.F.R. § 387.11(b). Because Blue Donkey is a Colorado limited liability company with a policy issued under Colorado law, Colorado law controls whether punitive damages are insurable and potentially recoverable in this case.

Colorado law is clear and unequivocal on this issue. "The public policy of Colorado prohibits an insurance carrier from providing insurance coverage for punitive damages." Lira v. Shelter Ins. Co., 913 P.2d 514, 517 (1996) (citing Universal Indemnity Ins. Co. v. Tenery, 39 P.2d 776, 779 (1934); Gleason v. Fryer, 491 P.2d 85, 86 (1971)). Since Plaintiff's claims are limited to the insurance policy coverage and its policy limits, her claim for punitive damage cannot stand. The Court GRANTS Defendant's Motion to Dismiss in part by finding and ordering Plaintiff's punitive damage claim dismissed.

**CONCLUSION**

For the reasons detailed above, Defendants Blue Donkey Transport, LLC and Warren J. Lewis's Motion to Dismiss and Quash Service of Process (Dkt. 12) is **DENIED** in part and **GRANTED** in part. Pursuant to Fed. R. Civ. P. 12(a)(4), the Defendants are ordered to serve a responsive pleading to Plaintiff's Petition, with exception to the Punitive Damage claims which are **DISMISSED,** within 14 days of this Order.

**IT IS SO ORDERED** this 4th day of October, 2018.

James H. Payne
United States District Judge
Eastern District of Oklahoma